UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OTIS B. WILLIS, JR.,

Plaintiff,

Case # 15-CV-6284-FPG

v.

DECISION AND ORDER

ROCHESTER POLICE DEPARTMENT, et al.,

Defendants.

## INTRODUCTION

*Pro se* Plaintiff Otis B. Willis, Jr. brings claims of false arrest and malicious prosecution under the Fourth Amendment,[1] pursuant to 42 U.S.C. § 1983,[2] against Defendants City of Rochester, the Rochester Police Department, Rochester Police Chief Michael Ciminelli, Arresting Officer 10# ROC 1762, Monroe County ("the County"), Monroe County District Attorney Sandra Doorley ("D.A. Doorley"), and Monroe County Assistant District Attorney Gregory Clark ("A.D.A. Clark"), with the individual defendants sued in both their personal and official capacities.

Plaintiff filed his Amended Complaint on March 22, 2017. ECF No. 16. On November 8, 2017, the County, D.A. Doorley, and A.D.A. Clark ("the County Defendants") moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] ECF No. 22. In

---

[1] In his Amended Complaint, Plaintiff lists the federal basis for his claims as the "1st, 8th, 14th [A]mendments of the U.S. Constitution; [t]o be announced." ECF No. 16, at 4. However, the substance of the Amended Complaint appears to only set forth claims of false arrest and malicious prosecution, *see id.* at 4–5, which would fall within the ambit of the Fourth Amendment, *see, e.g.*, *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115–16 (2d Cir. 1995).

[2] While Plaintiff does not explicitly refer to § 1983, as discussed *infra*, his constitutional claims against government officials are necessarily brought via that statute.

[3] The County Defendants' Notice of Motion is titled "Notice and Motion for Summary Judgment," but the contents recite and rely upon the standard for a Rule 12(b)(6) motion to dismiss, and the section entitled "Grounds for Motion" lists only Rule 12(b)(6). *See* ECF Nos. 22, 22-1. Accordingly, the Court understands the lone reference to summary judgment to be a typographical error.

response, on March 19, 2018, Plaintiff filed a proposed Second Amended Complaint,[4] ECF No. 29, which the County Defendants opposed as futile, ECF No. 30. For the reasons that follow, the County Defendants' Motion to Dismiss (ECF No. 22) is GRANTED, Plaintiff's motion to amend the Amended Complaint[5] (ECF No. 29) is DENIED as to the County Defendants (both current and proposed), and the claims against the County Defendants are hereby DISMISSED.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) instructs that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the requirements of Rule 8(a)(2) for "all civil actions." *Iqbal*, 556 U.S. at 684. To be sufficient, a pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). In that vein, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). That measure of plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"—the pleaded facts must permit a "reasonable inference" of liability for the alleged misconduct. *Id.*; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (instructing that "all reasonable inferences" are to be taken in the plaintiff's favor).

---

[4] Although Plaintiff's submission is titled "Amended Complaint," *see* ECF No. 29, it is actually his proposed Second Amended Complaint.

[5] Based on Plaintiff's *pro se* status, the Court construes his proposed Second Amended Complaint to also function as a motion to amend his Amended Complaint. *See* Fed. R. Civ. P. 15(a)(1)–(2) (instructing that "[a] party may amend its pleading once as a matter of course within" certain windows of time, outside of which "a party may amend . . . only with the opposing party's written consent or the court's leave").

While a *pro se* plaintiff's complaint remains subject to Rule 8(a)(2)'s requirements, it is entitled to "special solicitude," requiring a court to "interpret[] the complaint to raise the 'strongest claims that it suggests.' " *See, e.g.*, *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting the "obligat[ion] to construe a *pro se* complaint liberally"). Beyond the facts alleged in a *pro se* plaintiff's complaint, a court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), along with "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *e.g.*, *Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Alsaifullah v. Furco*, No. 12 Civ. 2907(ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (instructing that a district court may consider facts included in a *pro se* party's opposition papers in deciding a motion to dismiss).

Rule 15(a)(2) instructs that a court "should freely give leave [to amend] when justice so requires." To that end, "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139–40 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (alterations in original). But a court may deny further leave to amend where amendment "would be 'futil[e].'" *Id.* at 140 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alteration in original). Amendment is futile if the proposed claim "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

When—as in this case—a motion to amend is filed in response to a pending motion to dismiss, "a court has a variety of ways in which" to proceed, "from denying the motion [to dismiss] as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint." *Conforti v Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016). Here, Plaintiff seeks to add additional parties and claims, but the core of his pleadings remains the same. Moreover, the County Defendants have responded in opposition to Plaintiff's proposed amendments, arguing that—even if they are considered—the Motion to Dismiss should still be granted. Therefore, in the interest of efficiency, the Court will first determine if the Amended Complaint survives the County Defendants' Motion to Dismiss. If the Amended Complaint would not survive, then the Court will turn to the proposed Second Amended Complaint to determine whether the proposed amendments would prove futile. *See id.* If they would, then the Court will dismiss those claims against the County Defendants.

## DISCUSSION

### I.      Section 1983

Plaintiff's Amended Complaint advances claims of false arrest and malicious prosecution under the Fourth Amendment. Those causes of action necessarily proceed pursuant to 42 U.S.C. § 1983, which provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 does not create any substantive rights; rather, it serves as a vehicle "for vindicating federal rights elsewhere conferred." *See, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 133 n.3 (1979)). Accordingly, the Court

construes Plaintiff's constitutional claims against the County Defendants to be brought under §
1983.

To sufficiently plead individual liability for A.D.A. Clark and D.A. Doorley under § 1983,
Plaintiff must provide facts showing their "personal involvement in the alleged constitutional
deprivation." *Grullon*, 720 F.3d at 138–39. With respect to the County, a municipality cannot be
held vicariously liable under § 1983 for the actions of its employees. *Connick v. Thompson*, 563
U.S. 51, 60 (2011). Rather, the municipality must "itself 'subject' a person to a deprivation of
rights or 'cause[]' a person 'to be subjected' to such deprivation." *Id.* Thus, to hold a municipality
liable under § 1983, a plaintiff must show that the complained-of injury came from "action
pursuant to official municipal policy." *Id.* at 60–61 (quoting *Monell v. Dep't of Social Servs.*, 436
U.S. 658, 694 (1978)).

## II.     Amended Complaint

### A.     Claims Against D.A. Doorley and A.D.A. Clark

In his Amended Complaint, Plaintiff alleges that "the aforementioned [Defendants] and
specifically ADA Clark along with others both known and unknown, arrested and imprisoned,
violated [P]laintiff's right to due process, vindictively prosecuted (maliciously prosecuted[)] . . .
[P]laintiff." ECF No. 16, at 4–5. Following this broad assertion of liability, Plaintiff elaborates that
he "was arrested by Rochester Police Department and held with and without bail without my
consent." *Id.* at 4. While Plaintiff's subsequent explanation suggests that he did not intend to assert
his false arrest claim against the County Defendants, out of an abundance of caution, the Court
will address both claims with respect to the County Defendants.

### 1. False Arrest

A claim of false arrest under § 1983 "is substantially the same as . . . under New York law," *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)), and requires factual allegations that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged," *id.*

To the extent that Plaintiff sought to assert his false arrest claim against A.D.A. Clark or D.A. Doorley, his Amended Complaint includes no facts to suggest that either was involved in his confinement—let alone, without justification. Accordingly, if Plaintiff intended to assert a false arrest claim against A.D.A. Clark or D.A. Doorley, such a claim fails.

### 2. Malicious Prosecution

A claim of malicious prosecution under § 1983 is governed by New York state law, *see Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017), which requires factual allegations demonstrating "(i) the commencement or continuation of a criminal proceeding against [the plaintiff]; (ii) the termination of the proceeding in [his] favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice,'" *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). Beyond that showing, a successful claim under § 1983 also requires the plaintiff to allege "a 'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Id.* (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

As a preliminary matter, Plaintiff's Amended Complaint fails to state a claim for malicious prosecution against the County Defendants. Apart from the general—and entirely conclusory—

claim that the County Defendants "vindictively prosecuted (maliciously prosecuted[)]" him, Plaintiff asserts that there was an "elongated delay in commencement of prosecution due to the negligence of prosecution and lack of investigation," and he notes "the previous dismissal of numerous cases in the state which were dismissed in [his] favor." ECF No. 16, at 4–5. These allegations are plainly insufficient to state a claim of malicious prosecution. Plaintiff makes only vague reference to a criminal prosecution and various state proceedings—he does not allege facts suggesting the termination of a specific criminal proceeding in his favor, a lack of probable cause, or malice. Given that Plaintiff's pleadings do not meet the basic requirements to state a malicious prosecution claim, Plaintiff's claim against the County Defendants fails from the outset.

Moreover, even if Plaintiff had sufficiently alleged the required elements, A.D.A. Clark and D.A. Doorley would be entitled to immunity for this claim. As the Second Circuit explained in *Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993), a state official sued in both her official and personal capacities for damages pursuant to § 1983 retains "parallel lines of privileges": in her official capacity, she "may assert the state's Eleventh Amendment immunity," and in her personal capacity, she may "assert privileges of absolute or qualified immunity," *id.* at 529.

In their official capacities, A.D.A. Clark and D.A. Doorley have Eleventh Amendment immunity as agents of New York State.[6] Claims against a defendant in her official capacity are construed as claims "against the entity" of which the defendant "is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). In that vein, "[w]hen

---

[6] A.D.A. Clark and D.A. Doorley have not expressly asserted their immunity under the Eleventh Amendment. However, the Court may address the issue *sua sponte*, which it elects to do here. *See, e.g.*, *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006) (recognizing that "lower courts may raise the issue of Eleventh Amendment immunity sua sponte"), *quoted in McDonough v. Smith*, No. 1:15-cv-01505 (MAD/DJS), 2016 WL 7496128, at *5 (N.D.N.Y. Dec. 30, 2016) (dismissing claims against an individual defendant in his official capacity on Eleventh Amendment grounds, even though the defendant had not invoked Eleventh Amendment immunity in his motion to dismiss).

prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State[,] not the county." *Gan*, 996 F.2d at 536 (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1998)); *accord D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) (citing *Gan*, 996 F.2d at 536) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State . . . ."). The Eleventh Amendment bars federal claims against states absent their consent to such suits or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Graham*, 473 U.S. at 169. New York has not consented to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977), nor has Congress abrogated states' immunity in enacting § 1983, the avenue by which Plaintiff brings his malicious prosecution claim, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). Because A.D.A. Clark and D.A. Doorley acted as agents of New York State in prosecuting Plaintiff, the Eleventh Amendment shields them from liability in their official capacities.

In their personal capacities, A.D.A. Clark and D.A. Doorley have absolute prosecutorial immunity. Prosecutors receive absolute immunity "for . . . acts that are 'intimately associated with the judicial phase of the criminal process' and their role as advocates." *McDonough v. Smith*, 898 F.3d 259, 269 (2d Cir. 2018) (quoting *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013)). While prosecutors "receive only qualified immunity for acts that are investigatory in nature," *id.*, Plaintiff's claim, by its terms, challenges a prosecutorial action, *see id.* (agreeing with the district court that "the distinction between a prosecutor's investigative and prosecutorial functions is immaterial to a malicious prosecution claim, since prosecutors are generally immune from such claims" (citation omitted)); *D'Alessandro*, 713 F. App'x at 5 ("[A] prosecutor still acts within the scope of her duties even if she . . . engages in malicious prosecution . . . ."); *Shmueli v.*

*City of New York*, 424 F.3d 231, 238 (2d Cir. 2005). As long as A.D.A. Clark and D.A. Doorley had "at least a colorable claim of authority" in prosecuting Plaintiff—meaning that "the pertinent statutes may have authorized prosecution for the charged conduct"—they are entitled to prosecutorial immunity in their personal capacities. *See Shmueli*, 424 F.3d at 237 ("[T]he prosecutor has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction.'" (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987))). Plaintiff does not contend that A.D.A. Clark and D.A. Doorley were without the statutory authority to prosecute him—rather, he questions their conduct and motives in doing so. Because Plaintiff challenges a clearly prosecutorial action, A.D.A. Clark and D.A. Doorley are entitled to absolute prosecutorial immunity for the malicious prosecution claim brought against them in their personal capacities.

### B.     Claims Against the County

To hold the County liable, as discussed *supra*, Plaintiff would need to plead a constitutional deprivation resulting from action taken pursuant to official County policy. *See Connick*, 563 U.S. at 60. With neither alleged constitutional violation sufficiently pleaded, there is no deprivation for which to hold the County liable.

In sum, the Amended Complaint fails to state a claim upon which relief can be granted, and, consequently, would warrant dismissal under Rule 12(b)(6). However, because Plaintiff has submitted a proposed Second Amended Complaint, the Court turns to the allegations therein to determine whether the proposed amendments would be futile, or whether a viable claim might be stated.

### III.     Proposed Second Amended Complaint

In his proposed Second Amended Complaint, Plaintiff includes a number of new claims against the County Defendants, including "vindictive prosecution," "denial of prompt prosecution," "denial of a fair trial" (based on "fabrication and/or omission of evidence"), "conspiracy to interfere with civil rights," and "infliction of emotional distress." *See* ECF No. 29, at 9–14. Plaintiff provides more detail regarding his claims and the underlying facts alleged, but his timeline is difficult to follow (and, at various points, inconsistent), which may be attributable to potential typographical errors in dates. Although Plaintiff is *pro se*, Rule 8(a)(2) still requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's failure to clearly set forth the facts alleged hampers the Court's ability to assess the merits of his claims. Nevertheless, to piece together the factual background, the Court has assessed Plaintiff's allegations in conjunction with the procedural history (i) discernible from the public dockets of the referenced cases; and (ii) conveyed in the underlying decision dismissing his state court indictment, which he repeatedly references in the proposed Second Amended Complaint and quotes (with page citations) in the Affirmation attached thereto. *See Magniafico v. Blumenthal*, 371 F.3d 391, 297–98 (2d Cir. 2006)); *Shmueli*, 424 F.3d at 233 ("The New York State ('State') prosecution of Shmueli is a matter of public record, of which we take judicial notice.").

Plaintiff alleges that, on June 4, 2009, he was arrested in conjunction with the execution of a search warrant at premises located in Rochester, New York. Following that arrest, he was incarcerated for approximately 70 days for a violation of his probation. Three years later—in December 2012—Plaintiff was arrested on unrelated federal charges. He was arraigned and ordered detained on those charges in January 2013, and he remained detained on those charges

throughout the underlying state prosecution at issue.[7] The relevant state prosecution stemmed from Plaintiff's June 2009 arrest, but Plaintiff was not indicted on the weapons charges at issue until September 2013.[8] After conducting a hearing on that preindictment delay,[9] the state court determined that the delay was undue and, accordingly, dismissed Plaintiff's indictment on January 29, 2015.

### B. Federal Claims Against D.A. Doorley and A.D.A. Clark

#### 1. False Arrest

Plaintiff's proposed Second Amended Complaint does not provide any additional allegations to suggest that A.D.A. Clark participated in his arrest or detention. *Cf., e.g.*, *Hickey v. City of New York*, No. 01 CIV. 6506(GEL), 2002 WL 1974058, at *3 (S.D.N.Y. Aug. 26, 2002). Plaintiff states that D.A. Doorley should be held individually liable as a supervisor for "failing to provide adequate training, supervision, and discipline of Clark," which, Plaintiff alleges, resulted in a number of his claimed deprivations, including his "false arrest." ECF No. 29, at 12. But, as mentioned, Plaintiff has not alleged any facts to suggest personal involvement by A.D.A. Clark. It follows that, if A.D.A. Clark's actions do not form the basis for Plaintiff's false arrest claim, then there is no underlying misconduct for which to hold D.A. Doorley liable as a supervisor. As a

---

[7] The state court decision states that, at the time of its issuance, "[t]he federal matter [wa]s currently pending," and Plaintiff had "been incarcerated in connection therewith for more than two years." ECF No. 30-1, at 6. The County Defendants also argue that "Plaintiff was already incarcerated at the time of the prosecution he complains of in this case." ECF No. 20, at 2. With respect to the federal case, it appears that Plaintiff was incarcerated until early January 2015 (just prior to the dismissal of the state court indictment), when he was ordered released on home detention. *See* Order Setting Conditions of Release, *United States v. Willis*, No. 13-CR-6013-FPG-MWP (W.D.N.Y. Jan. 6, 2015).

[8] In Plaintiff's proposed Second Amended Complaint, he states that he was indicted on September 17, 2009, *see* ECF No. 29, at 5, but, in his Affirmation, he lists the year as 2013, *see id.* at 17. The state court decision states that the indictment was filed on September 17, 2013, ECF No. 30-1, at 5, and the docket reflects that the indictment was filed on September 18, 2013.

[9] Plaintiff maintains that "a probable cause hearing was conducted" "in August and September of 2014." ECF No. 29, at 6. He then refers to "another hearing," which he describes as a *Singer* hearing, *see People v. Singer*, 376 N.E.2d 179 (N.Y. 1978), but he provides a date of "January 6, 2009." *Id.* Logically speaking, the state court could not have held any such hearing prior to Plaintiff's indictment.

result, the proposed amendment of the false arrest claim against A.D.A. Clark and D.A. Doorley (to the extent such a claim was asserted) would be futile.

### 2. Malicious Prosecution

The proposed Second Amended Complaint still fails to state a claim for malicious prosecution. Plaintiff's indictment by a grand jury establishes "a presumption of probable cause that may *only* be rebutted by evidence the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *see also, e.g.*, *Hadid v. City of New York*, 730 F. App'x 68, 71 & n.1 (2d Cir. 2018) (summary order) ("We have routinely affirmed dismissals of malicious prosecution claims at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment."). The burden of rebutting that presumption lies with Plaintiff, *see Savino*, 331 F.3d at 73, but he fails to allege facts suggesting that his indictment was improperly procured.[10] He makes passing reference to "false statements of facts . . . for a determination of a probable cause and/or conviction" (although he was not convicted), but he fails to provide any further, or factual, context for that allegation. He also discusses the alleged fabrication of evidence, but the only timing he provides is that "some . . . admittedly was done immediately after the grand jury returned an indictment." *Id.* at 8. At most, he claims that A.D.A. Clark and D.A. Doorley did not inform the grand jury that (1) the federal government was not prosecuting him, *see* ECF No. 29, at 7; and (2) there had been delay in his investigation, *see id.* at 9, neither of which constitutes the requisite suppression of evidence. Even the most liberal interpretation of Plaintiff's proposed Second Amended Complaint produces only

---

[10] Indeed, in the Affirmation attached to his proposed Second Amended Complaint, he concedes that, "[o]f course, the indictment of a plaintiff is also some indication of a probable cause to arrest." ECF No. 29, at 15.

conclusory assertions of Plaintiff's innocence and the absence of probable cause, not factual allegations related to Plaintiff's indictment.

On a separate front, as discussed, Plaintiff was already incarcerated on unrelated federal charges throughout the pendency of his state court prosecution. "Courts have held, for purposes of a malicious prosecution claim, that 'an inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses.'" *Allen v. City of New York*, 480 F. Supp. 2d 689, 717 (S.D.N.Y. 2007) (quoting *Holmes v. Grant*, No. 03 Civ. 3426 RJH RLE, 2006 WL 851753, at *43–44 (S.D.N.Y. Mar. 31, 2006)). Plaintiff does not articulate a purported deprivation beyond that incarceration, and he fails to provide any details sufficient for the Court to infer an additional deprivation beyond his continued detention, which was already pursuant to the unrelated federal charges. *See Allen*, 480 F. Supp. 2d at 718; *cf. DeJesus v. City of New York*, 55 F. Supp. 3d 520, 523–24 (S.D.N.Y. 2014) (discussing Fourth Amendment seizures for incarcerated individuals in the false arrest context).

Moreover, this remains a malicious prosecution claim, and—as discussed *supra*—A.D.A. Clark and D.A. Doorley have Eleventh Amendment immunity in their official capacities[11] and prosecutorial immunity in their personal capacities. *See* ECF No. 29, at 9 (making passing—and conclusory—reference to "acti[ons] in an investigatory capacity," but solely taking issue with the County Defendants' "conduct[] *in commencing criminal proceedings*" (emphasis added)). Indeed, as to the question of authority, Plaintiff's proposed Second Amended Complaint makes clear that he was prosecuted on weapons charges, and he does not argue that A.D.A. Clark and D.A. Doorley

---

[11] In the section of his proposed Second Amended Complaint entitled "Preliminary Statement," Plaintiff broadly states that he "seeks compensatory and punitive damages, declaratory relief, injunctive relief, an award of costs and legal fees, . . . and such other and further relief as the Court deems just and proper." ECF No. 29, at 1. In his actual prayer for relief, however, he fails to specify any prospective injunctive relief, which would be necessary to bring his claims outside the scope of the individual County Defendants' Eleventh Amendment immunity. *See id.* at 14; *e.g.*, *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015).

could not pursue such charges—he simply maintains that they should not have done so against him. Because Plaintiff would still be challenging an inherently prosecutorial function, even if Plaintiff had sufficiently alleged malicious prosecution—which he has not—A.D.A. Clark and D.A. Doorley would be absolute prosecutorial immunity, in addition to their Eleventh Amendment immunity.

Because Plaintiff fails to state a claim for malicious prosecution, the Court does not reach his alternative theory of liability for D.A. Doorley as A.D.A. Clark's supervisor, *see* ECF No. 29, at 12 (attempting to hold D.A. Doorley liable on a failure-to-train basis)—without a sufficient allegation of malicious prosecution against A.D.A. Clark, there would be no violation for which to hold D.A. Doorley responsible.

### 3. Vindictive Prosecution

To the extent that this is even a cognizable cause of action under § 1983—which the Court does not determine[12]—a claim of vindictive prosecution would implicate the right to due process. *See United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000). In the criminal context, the Second Circuit has explained that a prosecution brought to "'penaliz[e] those who choose to exercise' constitutional rights[] 'would be patently unconstitutional.'" *Sanders*, 211 F.3d at 716 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969)); *see also id.* ("[T]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic

---

[12] As another district court recognized, "vindictive prosecution has seldom been used in civil litigation as a [§] 1983 tort," "[p]resumably because of its origins in criminal law." *Collins v. Jones*, No. 2:13-cv-07613-DS, 2015 WL 790055, at *11 (E.D. Pa. Feb. 24, 2015). That court collected cases to reason that "[m]ost courts faced with such [§] 1983 claims have, however, recognized it as a valid cause of action" and "look to more established criminal case law to guide the standards employed in the civil sphere." *Id.* (footnote omitted). Other courts, however, have reached the opposite conclusion. *See, e.g.*, *Puentes v. County of Santa Clara*, No. C 11-1228 PJH, 2012 WL 253232, at *4 (N.D. Cal. Jan. 26, 2012) ("The court is unpersuaded that a retaliation and/or vindictive prosecution claim pursuant to the Fourteenth Amendment due process guarantee is cognizable pursuant to [§] 1983. At best, plaintiff's claim may be analogized instead to a malicious prosecution claim."). For purposes of the instant motions, this distinction does not make a difference, since—even if Plaintiff could bring such a claim—it would fail for the reasons discussed.

sort." (quoting *Bordenkicher v. Hayes*, 434 U.S. 357, 363 (1978)). To that end, for purposes of a criminal defense, the requisite vindictiveness requires a demonstration "that the prosecutor's charging decision was a 'direct and unjustifiable penalty' that resulted 'solely from the defendant's exercise of a protected legal right.'" *Id.* at 716–17 (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11, 384 & n.19 (1982)). Plaintiff states only, in conclusory terms, that "Defendants . . . commenced and proceed with litigation in an attempt at retaliation," ECF No. 29, at 10, and he does not claim that he was prosecuted for the exercise of some legal right. Accordingly, even if he could pursue this claim under § 1983, he would still fail to state a claim. Moreover, A.D.A. Clark and D.A. Doorley would remain entitled to Eleventh Amendment immunity and prosecutorial immunity, given the nature of the claim. *Cf. Shmueli*, 424 F.3d at 236–37.

### 4. Denial of Fair Trial[13]

A defendant's right to due process under the Fourteenth Amendment encompasses "the right to have one's case tried based on an accurate evidentiary record that has not been manipulated by the prosecution." *Dufort*, 874 F.3d at 355; *see also Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) ("The right to a fair trial[][is] guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment." (quoting *Cone v. Bell*, 556 U.S. 449, 451 (2009)) (alterations in original)). Section 1983 therefore permits suits for violations of the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity," *Dufort*, 874 F.3d at 354 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 344 (2d Cir. 2000) (specifying that such a right is constitutional, "provided that the [complained-of]

---

[13] A plaintiff may still bring a due process claim for the denial of a fair trial even when no trial ultimately occurred. *E.g.*, *Sumasar v. Nassau County*, No. CV 11-5867 (ARL), 2016 WL 1240381, at *11 n.1 (E.D.N.Y. Mar. 28, 2016); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 346 (S.D.N.Y. 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997)) ("The Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place.").

deprivation of liberty . . . can be shown to be the result of [the] fabrication of evidence")), and for "*Brady* violations that lead to a distorted evidentiary record being presented to the jury," *id.* at 354–55; *see also Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (summary order) (describing "a fair trial claim . . . where . . . prosecutors withhold material exculpatory or impeaching evidence from a defendant" as "essentially a civil claim seeking damages for a *Brady* violation"); *see generally Brady v. Maryland*, 373 U.S. 83 (1963).

A plaintiff claiming a due process violation based on fabricated evidence must allege that "(1) [an] investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 446 (E.D.N.Y. 2015) (quoting *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)).

Plaintiff broadly alleges the creation of "false information likely to influence a fact finder's or jury's decision," but it is not even clear against whom Plaintiff levies this claim—he asserts that the fabricated evidence was "forwarded . . . to the Courts, grand jury, and/or prosecutors," *id.*, but the County Defendants *were* the prosecutors. The same confusion appears elsewhere: for example, Plaintiff alleges that "[t]he defendants," generally speaking, "intentionally fabricated against him, created fabricated testimony, and or [sic] fabricated documents, reports, and notes." *Id.* at 11.

The County Defendants maintain that "all the causes of action laid out in the proposed [S]econd [A]mended [C]omplaint, including the allegations that Defendants 'created false information' against Plaintiff," fall within their absolute prosecutorial immunity. ECF No. 30, at 4 (quoting ECF No. 29, at 10–11). But, if A.D.A. Clark or D.A. Doorley fabricated evidence while acting in an investigatory capacity, such actions would be entitled only to qualified immunity, not absolute immunity. *See, e.g.*, *Zahrey*, 221 F.3d at 349.

Regardless, the only specific and somewhat *factual* allegations[14] of fabrication against the County Defendants are (1) Plaintiff's claim that A.D.A. Clark created a memorandum with a false accounting of a "non-existent" investigation[15]; and (2) Plaintiff's broader claim that "[t]he DA[']s Office conveniently transcribed documents and falsified testimony . . . to distort facts in their favor of a non-existent 'ongoing investigation' alleged to have been conducted by previous ADAs and even a Judge." ECF No. 29, at 10.

From a preliminary standpoint, the Court observes that Plaintiff's allegations do not relate to evidence purportedly manufactured against him—instead, he claims that the County Defendants attempted to generally portray that an investigation was ongoing when it was actually stagnant. *See, e.g.*, *id.* at 5 (describing the memorandum as "recollecting dates that action had allegedly been taken on [Plaintiff's] case"). Even taken as true, it is not clear how that alleged misrepresentation would constitute evidence against Plaintiff or, consequently, how it would have any impact on a jury's ultimate decision regarding the charges brought against Plaintiff. Additionally, Plaintiff fails to allege any actual deprivation of liberty that resulted—particularly, given the fact that, as addressed with Plaintiff's malicious prosecution claim, he was already incarcerated during his state court prosecution pursuant to the unrelated federal charges. *See, e.g.*, *Gogol v. City of New York*, No. 15 Civ. 5703 (ER), 2017 WL 3449352, at *11 (S.D.N.Y. Aug. 10, 2017) (reasoning that, although "a fair trial claim based on fabrication of evidence does not arise from the Fourth Amendment," guidance may still be derived from "case law that examines" the deprivation of liberty "for malicious prosecution claims as well as fair trial claims"); *Perez v. Duran*, 962 F. Supp.

---

[14] Plaintiff repeatedly recites the general elements of the claim, but—under the pleading standards articulated *supra*—that is insufficient to state a claim.

[15] Once again, Plaintiff's timeline is inherently contradictory. He claims that A.D.A. Clark's memorandum was "dated January 5, 2009," *see* ECF No, 29, at 5, but—by Plaintiff's own account—the search warrant from which his ultimate charges stemmed was not executed until June 4, 2009, and ADA Clark was not assigned to the case until August 2009 (although the date of A.D.A. Clark's assignment is also unclear, given that Plaintiff's Affirmation lists the date as "August 2013," *see id.* at 18).

2d 533, 544 (S.D.N.Y. 2013) (using the same analysis for the deprivation of a liberty interest in assessing fair trial and malicious prosecution claims).

To state a due process violation under § 1983 based on the omission of evidence (pursuant to a *Brady* theory), a plaintiff must allege facts to demonstrate (1) "[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence [was] suppressed by the State, either willfully or inadvertently"; and (3) "prejudice . . . ensued." *See Poventud v. City of New York*, 750 F.3d 121, 132–33 (2d Cir. 2014). Plaintiff does not identify evidence "favorable" to him—instead he simply alleges A.D.A. Clark and D.A. Doorley "intentionally withheld from and misrepresented to the Court . . . exculpatory facts that vitiated probable cause." ECF No. 29, at 9. More importantly, though—as to prejudice—Plaintiff's state court prosecution ceased when his indictment was dismissed, and "a criminal defendant's *Brady* right to disclosure of exculpatory evidence is violated only in the case of prejudice to the ultimate conviction of the criminal defendant." *See Ambrose v. City of New York*, 623 F. Supp. 2d 454, 471–72 (S.D.N.Y. 2009) (dismissing a § 1983 due process claim on a *Brady* theory where the plaintiff was acquitted of the criminal charges against him); *see also Poventud*, 750 F.3d at 132 ("This Court has emphatically and properly confirmed that *Brady*-based § 1983 claims necessarily imply the validity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred." (emphasis omitted)). With respect to Plaintiff's (again, conclusory) claims that A.D.A. Clark and D.A. Doorley withheld information from the grand jury, "a prosecutor has no constitutional obligation to provide exculpatory information to a grand jury," *see Ambrose*, 623 F. Supp. 2d at 474 n.8 (S.D.N.Y. 2009) (determining that the plaintiff failed to state a claim "based on the alleged withholding of exculpatory evidence from the grand jury that indicted" him), and A.D.A. Clark and D.A. Doorley would still be entitled to prosecutorial immunity even if they

"deliberately withh[e]ld . . . exculpatory information," *Shmueli*, 424 F.3d at 237 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n. 34 (1976)); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).

### 5.     Denial of Prompt Prosecution

Plaintiff claims, in general terms, that he was denied a "prompt prosecution," and he cites the Sixth Amendment, which guarantees the right to a speedy trial. *See* U.S. Const. amend. VI. At base, Plaintiff takes issue with the decision to initiate his prosecution years after the execution of the search warrant—he maintains that the County Defendants "knew or should have known that there was no need of [sic] prosecution after such an elongated delay in prosecution." ECF No. 29, at 10–11. But "a delay in prosecution does not implicate the speedy trial guarantee"—"[i]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the Sixth Amendment." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 379 (E.D.N.Y. July 19, 2013) (first quoting *United States v. Elsbery*, 602 F.2d 1053, 1058 (2d Cir. 1979), and then quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)).

Moreover, even on due process grounds, a "claim . . . that the District Attorney's office took too long to commence prosecution[] . . . is precisely the sort of action—the decision whether or not to prosecute—that is protected by absolute immunity." *See Allen v. City of New York*, No. 12-CV-4961 (KAM)(LB), 2014 WL 4258529, at *4 (E.D.N.Y. Aug. 27, 2014); *see also Lewis v. Johnson*, No. 04 Civ.3784(AKH), 2005 WL 2158806, at *2 (S.D.N.Y. Sept. 1, 2005) ("The decision to initiate a prosecution is clearly an act . . . for which [an] attorney is entitled to absolute immunity. The decision to delay presentation of evidence to a grand jury is also an act for which

[an] Assistant District Attorney cannot be held liable for money damages." (internal citation omitted)).

### 6. Conspiracy

In support of his claim of conspiracy under 42 U.S.C. § 1985, Plaintiff states—in one line—that the County Defendants "agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal." ECF No. 29, at 12. Such conclusory pleading clearly fails to state a claim. *See, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (determining that a conspiracy allegation under § 1985 must fail where "[t]he plaintiffs [did] not allege[], except in the most conclusory fashion, that any . . . meeting of the minds occurred among any or all of the defendants"); *Galliotti v. Green*, No. 07-cv-6601, 2011 WL 2938449, at *7 (W.D.N.Y. July 19, 2011) ("A purely conclusory allegation of a meeting of the minds is not enough.").

### C. Federal Claims Against the County

As explained *supra*, to hold a municipality liable under § 1983, a plaintiff must show that the complained-of injury came from "action pursuant to official municipal policy." *Connick*, 563 U.S. at 60–61 (quoting *Monell*, 436 U.S. at 694). "Official municipal policy" encompasses "the decisions of a government's lawmakers, the acts of its policymaking officials, [or] practices so persistent and widespread as to practically have the force of law." *Id.* at 61. A municipality's failure to train its employees "about their legal duty to avoid violating citizens' rights" can also be actionable if it "rises to the level of an official government policy." *See id.* That standard is exacting, though: the choice to forgo training "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also id.* ("A municipality's

culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). To be considered "deliberately indifferent," a municipality's inaction must stem from a "conscious choice"—not "mere negligence." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Typically, a plaintiff asserting *Monell* liability on the basis of a municipality's failure to train needs to show "a pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62.

From the outset, if there is no constitutional violation sufficiently alleged, then there is no deprivation for which to hold the County liable under *Monell*. To the extent any claims were sufficiently pleaded, Plaintiff's allegations would still fail to support the imposition of *Monell* liability. Plaintiff first attempts to hold the County liable based on D.A. Doorley's actions as a "final policymaker." ECF No. 29, at 13. Specifically, he maintains that D.A. Doorley "intentionally, maliciously, and with reckless disregard and with deliberate indifference . . . created and maintained a custom, practice, or policy, by prosecuting" him "on numerous occasions where there was no basis for law, fact to do so, and or [sic] probable cause." *Id.* As discussed, however, when a district attorney acts as a prosecutor, she is an agent of the state, not the county. *See, e.g.*, *Gan*, 996 F.2d at 536. Plaintiff's allegation thus relates to D.A. Doorley in her actions on behalf of New York State—not the County. As a result, the County would not be liable for D.A. Doorley's prosecution of Plaintiff. *See Baez*, 853 F.2d at 77 ("A county has no right to establish a policy concerning how [a district attorney] should prosecute violations of [New York] State penal laws. . . . Where, as here, controlling law places limits on the County's authority over the district attorney, the County cannot be said to be responsible for the conduct at issue.").

Repackaging this liability as a failure-to-train (or similar) theory does not remedy the disconnect between the County and D.A. Doorley's prosecutorial actions. *See Hewitt v. City of*

*New York*, No. CV 2009-0214(RJD)(MDG), 2011 WL 441689, at *3 (E.D.N.Y. Feb. 7, 2011) ("[T]he failure to train relates to acts that would unquestionably be state acts if performed directly by the district attorney. It would be illogical to treat the district attorney as a municipal policymaker for failure to train subordinates on the performance of a state prosecutorial function."). Therefore, as pleaded, the County could not be held liable for D.A. Doorley's prosecution of Plaintiff. *See Baez*, 853 F.2d at 76 ("[A]s a matter of law the County is not liable for [the district attorney's] asserted wrongdoing. State law determines whether a particular official has the requisite policymaking authority that can render a governmental unit liable for unconstitutional actions taken in pursuance of that policy, and [the district attorney's] prosecutorial acts may not 'fairly be said to present official policy' of the County." (citations omitted)).

On a separate front, Plaintiff lists "municipal policies, practices, and customs" (presumably attributed to the County), ECF No. 29, at 13, but his allegations do not approach the specificity necessary to articulate any sort of pattern of violations. In conclusory terms, Plaintiff simply recites various causes of action and labels them "municipal policies, practices, and customs." *See, e.g.*, *id.* at 8, 13. While he alludes to "countless other[]" cases of misconduct, *see id.* at 13, he alleges no actual facts to that end, and he fails to provide any further *factual* basis for the imposition of *Monell* liability. Ultimately, then—even if he had stated a claim—Plaintiff's formulaic and conclusory pleading of *Monell* liability would prove insufficient to hold the County liable. *See, e.g.*, *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535–41 (S.D.N.Y. 2012) (discussing the factual allegations necessary to plead *Monell* liability).

**D.     Proposed Additional County Defendants**

Plaintiff seeks to add a number of additional County Defendants, including A.D.A. Matthew Schwartz, A.D.A. Robin Catalano, and the Monroe County D.A.'s Office,[16] *see* ECF No. 29, at 1–3, but amendment to add these parties would be futile.

Plaintiff cannot successfully state additional claims against the Monroe County D.A.'s Office. Courts in the Second Circuit have articulated a number of grounds for disposing of claims against a district attorney's office, including: (1) a district attorney's office is not a suable entity distinct from the district attorney under New York law, *see, e.g.*, *Woodward v. Office of Dist. Attorney*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010); *see also* Fed. R. Civ. P. 17(b)(3); (2) in making a decision to prosecute, a district attorney's office "acts as a quasi-judicial state actor . . . and is therefore immune from [§] 1983 liability under the Eleventh Amendment," *e.g.*, *Stratakos v. Nassau Cty.*, No. 15-cv-6244 (ADS)(ARL), 2016 WL 6902143, at *3 (E.D.N.Y. Nov. 23, 2016); and (3) for claims related to administration (and not prosecution), *see, e.g.*, *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1153 n.15 (2d Cir. 1995), a district attorney's office "is an administrative arm of" the county it represents "and therefore is not a suable entity" separate from the county, *e.g.*, *Booker v. Doe*, No. 11-CV-1632 (SJF)(ETB), 2011 WL 3648275, at *2 (E.D.N.Y. Aug. 10, 2011). Thus, under any construction, Plaintiff could not successfully assert additional claims against the Monroe County D.A.'s Office, and amendment to add the D.A.'s Office as a party would be futile.

The County Defendants argue that Plaintiff cannot add claims against A.D.A. Schwartz and A.D.A. Catalano because the applicable statute of limitations has expired, and the claims otherwise fail to relate back to Plaintiff's original filing. *See* ECF No. 30, at 3. The County

---

[16] While Plaintiff does not list the D.A.'s Office in the "Parties" section of his proposed Second Amended Complaint, he includes it in the caption and refers to at various points. *See* ECF No. 29.

Defendants are correct that, for a § 1983 cause of action, the statute of limitations is three years. *E.g.*, *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). They are also correct that "a proposed amendment is considered futile and leave may be appropriately denied when the statute of limitations for asserting the amended claim has expired." *Lin v. Joedy*, 214 F. Supp. 3d 207, 211 (W.D.N.Y. 2016). However, the Court need not even reach this argument to determine that amendment would be futile: Plaintiff does not plead personal involvement for A.D.A. Schwartz and A.D.A. Catalano separate from the claims and allegations detailed *supra* for A.D.A. Clark and D.A. Doorley, and—for the reasons already articulated—those claims would fail. Thus, even if Plaintiff could amend to add these parties (which it is not clear that he could do), it would not remedy the identified defects in the pleaded claims.

### E.        State Law Claims

Plaintiff also attempts to bring a claim of "infliction of emotional distress" under § 1983. *See* ECF No. 29, at 14. Based on the language used by Plaintiff, it appears to be a claim of intentional infliction of emotional distress ("IIED"). *Compare, e.g.*, *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (listing the first element of an IIED claim as "extreme and outrageous conduct" by the defendant), *with* ECF No. 29, at 14 (alleging "outrageous, excessive" conduct). But an IIED claim is a matter of state law, and—as such—is not actionable under § 1983. *See, e.g.*, *Politi v. City of New York*, No. 03-cv-2112 (SJF)(KAM), 2005 WL 8156892, at *3 (E.D.N.Y. Dec. 12, 2005). Even if the Court construed the claim as brought under New York law pursuant to the Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367(a), the Court would decline to exercise jurisdiction over this claim in light of the dismissal of all of the federal claims, *id.* § 1367(c)(3).

**CONCLUSION**

For the reasons stated, Plaintiff's Motion to Amend (ECF No. 29) is DENIED, and the County Defendants' Motion to Dismiss (ECF No. 22) is GRANTED. Plaintiff's Amended Complaint (ECF No. 16) is DISMISSED, and the Clerk of Court is directed to terminate D.A. Doorley, A.D.A. Clark, and Monroe County as parties to this action.

IT IS SO ORDERED.

Dated: September 27, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court